UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SYLVIA SPENCER, VICKI HULSE, and TED YOUNGBERG,<br><br>    Plaintiffs,<br><br>vs.<br><br>WORLD VISION, INC.,<br><br>    Defendant | CASE NO. C07-1551RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter is before the Court for consideration of Defendant's motion for summary judgment. Dkt. #6.[1] Defendant asserts that as a religious organization it is exempt from the religious discrimination provisions of Title VII. Plaintiffs oppose the motion, contending that Defendant does not qualify as a religious organization and is not exempt. The Court heard oral argument on this motion on May 7, 2008, and has fully considered the parties' arguments, exhibits, and the balance of the record. For the reasons set forth below, the Court shall GRANT Defendant's Motion for Summary Judgment.

## II. PROCEDURAL HISTORY

---

[1] Defendant originally filed a motion to dismiss, which this Court deemed a motion for summary judgment in its Order granting Plaintiff's Rule 56(f) motion. Dkt. #16. *See infra* Part II.

MEMORANDUM ORDER

PAGE - 1

This suit for employment discrimination was filed by Sylvia Spencer, Vicki Hulse, and Ted Youngberg ("Plaintiffs") against World Vision, Inc. ("Defendant")[2] on October 2, 2007. On October 17, 2007, Plaintiffs filed an amended complaint, alleging that they were discharged because of their religious beliefs in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-1. Dkt. #5, Complaint ¶¶ 4.2, 4.3.

On November 6, 2007, before answering, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that Defendant is exempt from religious discrimination claims under Title VII. Defendant attached to its motion to dismiss the affidavit of a corporate officer and various corporate documents that Defendant asserted demonstrate its eligibility for the religious organization exemption of Title VII. Declaration of Julie Regnier; Regnier Decl. Exs. A–ZZ.

In their November 8, 2007, motion to continue per CR 56(f), Plaintiffs contended that Defendant, by filing exhibits that go beyond the pleading, converted the motion to dismiss into a motion for summary judgment. By Order dated November 28, 2007, this Court granted Plaintiff's motion to continue its discovery and converted Defendant's motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 56. This motion was continued until February 29, 2008 to allow this discovery. This motion is now ripe for disposition.

### III.  DISCUSSION

**A.     Factual Background**

Defendant World Vision, Inc. is a nonprofit Christian humanitarian organization, which provides aid and services "to the world's poorest children and families." Regnier Decl. ¶ 3. Plaintiff Spencer was employed by Defendant as a Tech-Support Telecom Specialist from August 15, 1995 until November 14, 2006. Plaintiff Hulse was employed by Defendant as an Administrator/Coordinator from August 7, 1997 until November 14, 2006. Plaintiff Youngberg

---

[2] Plaintiffs refer to Defendant, World Vision, Inc., using the acronym WVI. Compl. ¶ 1.4. However, Defendant uses WVI to refer to World Vision International, which according to Defendant is a separate entity distinct from World Vision, Inc. Regnier Decl. Ex. A at 29. Defendant uses the acronym WVUS—World Vision United States—to refer to itself as the named Defendant. Dkt. #6. *See infra*, Part III.A.

MEMORANDUM ORDER

PAGE - 2

was employed by Defendant in various capacities, including as a Project Manager, from January 2005 until November 14, 2006.

Founded in 1950 by Dr. Robert Pierce, Defendant declares its mission is to be an "outreach of Christians concerned for the physical and spiritual well-being of people throughout the world . . . dedicated to serving God by serving man through six basic ministries." Regnier Decl. ¶ 3; *see also* Regnier Decl. Ex. A at 25. These ministries include: (1) caring for children in need, (2) building self-reliance among the needy, (3) emergency aid and relief, (4) evangelism, (5) strengthening Christian leadership, and (6) educating Americans about the needs of the suffering around the world. Regnier Decl. ¶ 3; *see also* Regnier Decl. Ex. A at 25–26.

In June 1978, World Vision International was established. Regnier Decl. Ex. A at 29. Located in Monrovia, California, World Vision International is a federation of national level entities, including entities that are either fully independent with separate boards and management or evolving to independent status with boards comprised of World Vision International staff. Regnier Decl. ¶ 4. As the umbrella organization, World Vision International provides corporate direction and operational support to overseas national entities. Regnier Decl. ¶ 4; *see also* Reigner Decl. Ex. A at 28.

Defendant is one of World Vision International's independent national entities. Regnier Decl. ¶ 5. Throughout the declarations and exhibits, Defendant has been referred to variously as World Vision, Inc. (U.S.), (World Vision United States ("WVUS"), and simply as World Vision. Regnier Decl. Ex. A at 26, 29; Regnier Decl. ¶ 2; Regnier Decl. Ex. A at 25, 31; Regnier Decl. Ex. A at 29.[3] For purposes of this Order, these entity variations will not be utilized, and Defendant will be referred to as "Defendant," meaning World Vision, Inc.

Defendant is a California nonprofit corporation with principal offices in Washington State. Regnier Decl. Ex. OO. Defendant raises funds in the United States; collects and prepares

---

[3] "World Vision was originally organized in the United States under the laws of the state of California. Since internationalization of the overall leadership and the establishment of World Vision International in June 1978, World Vision, Inc. (US) doing business as World Vision, functions . . . as a channel for education and information in the gathering of resources for ministry from the United States." Reigner Decl. Ex. A at 29.

MEMORANDUM ORDER

PAGE - 3

resources for overseas ministries and disaster relief; operates domestic humanitarian programs; and educates Americans, primarily through local churches, about the needs of the poor. Regnier Decl. ¶ 5.; *see also* Regnier Decl. Ex. A at 26. Defendant employs 1,200 individuals in 27 states. *See* Regnier Decl. ¶ 6. On the "Careers" page of its website, prospective employees are informed that:

> <u>Who we are</u>:
> Motivated by our faith in Jesus, we serve the poor as a demonstration of God's unconditional love for all people. Our faith is at the heart of all we do. Foundational to our work is the commitment to a shared faith by staff, volunteers and interns, and a common understanding of how that faith is lived out day-to-day.

Regnier Decl. Ex. D.

Defendant's offer letter to prospective employees references a Bible verse and includes the Statement of Faith and Organizational Commitment. Regnier Decl. ¶ 10; Regnier Decl. Ex. K. The Statement of Faith, as stated in Defendant's articles of incorporation, can also be found on the "Careers" page of its website. Regnier Decl. ¶ 11; Regnier Decl. Ex. E. Upon hiring, every employee is required to acknowledge receipt and agreement, in writing, with the World Vision Statement of Faith, Apostles Creed, core values, mission statement, and vision statement. Regnier Decl. ¶ 10. Plaintiffs acknowledged receipt of these documents and confirmed that they "subscribe[d], wholeheartedly to the principles inherent" in the documents. Regnier Decl. Exs. L, M, N.

In 2006, however, Plaintiffs discontinued their attendance at daily devotions and weekly chapels held during the workday. Regnier Decl. ¶ 15. Each Plaintiff was then interviewed, at which time Defendant asserts that Plaintiffs denied the deity of Jesus Christ. *Id.*; *see also* Regnier Decl. Ex. R. Plaintiffs were terminated on or about November 15, 2006. Regnier Decl. ¶ 15. Based on these events, Plaintiffs filed employment discrimination charges based on religious discrimination, and then brought the instant lawsuit.

**B.    Legal Standard**

MEMORANDUM ORDER
PAGE - 4

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party has the initial burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If the moving party satisfies this burden, the opposing party must then show there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). On a motion for summary judgment, the court neither determines credibility nor decides the truth of the matter. *Id.* Rather, the court draws all justifiable inferences from the admissible evidence in the light most favorable to the nonmoving party. *See id.* at 255.

### C. Title VII's "Religious Organization" Exemption

Title VII of the 1964 Civil Rights Act makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). However, "[i]n recognition of the constitutionally-protected interest of religious organizations in making religiously-motivated employment decisions" and to prevent excessive government entanglement, Congress declared that religious organizations are exempt from Title VII's prohibition against discrimination in employment on the basis of religion. *Hall v. Baptist Mem'l. Health Care Corp.*, 215 F.3d 618, 623 (6th Cir. 2000). The exemption provides: "This subchapter shall not apply . . . to a religious corporation, association, educational institution, or

MEMORANDUM ORDER

PAGE - 5

society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."[4] 42 U.S.C. § 2000e-1(a).

### 1. The applicable exemption: the factor tests

Title VII does not define what constitutes a religious organization—"a religious corporation, association, educational institution, or society"—as set forth in U.S.C. § 2000e-1(a). To ascertain whether an entity qualifies as a religious organization, courts conduct a factual inquiry and weigh "[a]ll significant religious and secular characteristics . . . to determine whether the corporation's purpose and character are primarily religious." *EEOC v. Townley Eng. & Mfg. Co.*, 859 F.2d 610, 618 (9th Cir. 1988). "[E]ach case must turn on its own facts." *Id.*

Courts have evaluated the religious and secular characteristics of an organization by considering a number of factors. *See id.* at 619; *see also* EEOC v. Kamehameha Schools/Bishop Estate, 990 F.2d 458, 461–63 (9th Cir. 1993), *cert. denied*, 510 U.S. 963, 114 S. Ct. 439, 126 L. Ed. 2d 372 (1993); *LeBoon v. Lancaster Jewish Cmty. Ctr.*, 503 F.3d 217, 226 (3rd Cir. 2007). In *Townley*, the Ninth Circuit discussed several factors before holding that a corporation that manufactured mining equipment was not a religious corporation exempt from Title VII. 859 F.2d at 619. Specifically, the Ninth Circuit considered the corporation's secular characteristics: (1) the company's for-profit status; (2) the company's purpose—production of a secular product; (3) the company's non-affiliation with or support by a church; and (4) the company's lack of religious purpose in its articles of incorporation. *Id.* It then considered the corporation's religious characteristics: (1) the enclosure of Gospel tracts in its outgoing mail; (2) the inclusion

---

[4] Title VII provides other exemptions from religious discrimination claims. *See* 42 U.S.C. § 2000e-2(e)(1) ("bona fide religious qualification" exemption); 42 U.S.C. § 2000e-2(e)(2) ("religious school" exemption). Courts have also recognized the "ministerial exemption." *See EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1369–70 (9th Cir. 1986); *EEOC v. Pacific Press Publ'g Ass'n*, 676 F.2d 1272, 1278 (9th Cir. 1982); *see also Young v. Northern Ill. Conference of United Methodist Church*, 21 F.3d 184 (7th Cir. 1994); *Scharon v. St. Luke's Episcopal Presbyterian Hosp*, 929 F.2d 360 (8th Cir. 1991); *Natal v. Christian and Missionary Alliance*, 878 F.2d 1575 (1st Cir. 1989); *McClure v. Salvation Army*, 460 F.2d 553, 558–60 (5th Cir. 1972). The source of the ministerial exemption is the Constitution, rather than the statue. *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 945 (9th Cir. 1999). Neither party has asserted that any exemption other than the "religious organization" exemption in 42 U.S.C. § 2000e-1(a) is applicable here; therefore, these additional exemptions will not be discussed.

MEMORANDUM ORDER
PAGE - 6

of printed Bible verses on its commercial documents (such as invoices and purchase orders); (3) the financial support given to churches, missionaries, and ministries; (4) the mandatory weekly devotional service for employees; and (5) the "discipleship [the corporation's founders and majority owners] have for the Lord Jesus Christ." *Id.* Ultimately, the Ninth Circuit, applying a narrow interpretation of the Title VII religious organization exemption, found that the characteristics indicated that the corporation was primarily secular and not entitled to exemption as a religious organization. *Id.* at 618–19.

Similarly, in *Kamehameha Schools*, the Ninth Circuit adopted its approach in *Townley* and construed the scope of Title VII's religious organization exemption narrowly to determine whether two schools, created by a will that exclusively mandated the hiring of Protestant teachers, qualified for that exemption. *Id.* at 459, 460. The Ninth Circuit enumerated six factors for consideration: (1) ownership and affiliation, (2) purpose, (3) faculty, (4) student body, (5) student activities, and (6) curriculum. *Id.* at 461–63. The Ninth Circuit evaluated these factors to hold that due to the largely secular nature of the schools, they did not qualify as "religious organizations." *See id.* at 461, 464.

In the instant case, the Plaintiffs rely almost entirely on *Kamehameha Schools* to argue that Defendant is not a religious organization.[5] Dkt. # 18. *Kamehameha Schools* is, however, factually distinguishable from the case at bar. Here, the Defendant is not an educational institution. Each of the factors in *Kamehameha Schools'* six-factor test solely focuses on the Schools as an educational institution. 990 F.2d at 461–63. Factors three through six concerning faculty, student body, student activities, curriculum, respectively, are exclusively applicable to schools. *See id* at 462–63. Plaintiffs attempt to analogize these factors to address the facts in the current case, recharacterizing the third factor, faculty, as employees; the fourth factor, student

---

[5] Plaintiffs cite to additional cases discussing the religious organization exemption, but these cases involved educational institutions, some of which were discussed under the 42 U.S.C. § 2000e-2(e)(2) "religious school" exemption. *See, for e.g.*, *Hall,* 215 F.3d 618. Dkt. # 18. Plaintiffs also cite cases referencing discrimination against women and other protected classes. Dkt. # 18. These cases are not relevant to the case at bar.

MEMORANDUM ORDER

PAGE - 7

body, service recipients; and the fifth and sixth factors, student activities and curriculum, are combined as services provided. Dkt. # 18. These analogies fail to fit the facts of this case.

The Ninth Circuit did not intend the scope of the test articulated in *Kamehameha Schools* to include religious organizations that are not educational institutions. *See* 990 F.2d at 460. First, the Ninth Circuit emphasized that "each case must turn on its own facts." *Id.* (citing *Townley*, 859 F.2d at 618. Therefore, the facts in this case concerning a humanitarian organization are clearly distinct from the facts in *Kamehameha Schools* concerning educational institutions.

Second, as articulated in *Townley*, *id.* at 618, and emphasized by Plaintiffs during oral argument, the Ninth Circuit construed the religious organization statutory exemption narrowly. *Kamehameha Schools*, 990 F.2d at 459. The exemption provided in 42 U.S.C. § 2000(e)-1 is available to a religious corporation, association, educational institution, or society. While an educational institution is one type of religious organization, the Ninth Circuit's express language that statutory exemptions are construed narrowly mandate that it be treated differently than a religious corporation, association, or society with regards to analyzing an organization's eligibility for exemption under 42 U.S.C. § 2000e-1. Accordingly, the factors in *Kamehameha Schools* are strictly applicable to educational institutions, and not a Christian humanitarian organization. Therefore, the test employed to determine whether a religious association or society qualifies as a religious organization cannot be the same test used for schools.

The Court finds that the *Kamehameha Schools* six-factor test does not provide an accurate framework for this Court to determine whether a religious organization that is not an educational institution is entitled to Title VII exemption. While the legal reasoning of *Kamehameha Schools* is germane, the factual distinction here compels application of a different test. The more recent test outlined in *LeBoon*, 503 F.3d 217, is better suited to the facts in the instant case. The Defendant is not an educational institution, and as a Christian humanitarian organization, it more closely resembles the Jewish community center in *LeBoon*—both serve the community.

MEMORANDUM ORDER

PAGE - 8

Moreover, the *LeBoon* test follows the Ninth Circuit; it incorporates both Ninth Circuit tests as well as tests from other circuits. *Id.* at 226 (citing *Killinger v. Samford Univ.*, 113 F.3d 196 (11th Cir. 1997); *Kamehameha Schools*, 990 F.2d 458; *Townley*, 859 F.2d at 618–19; *EEOC v. Miss. Coll.*, 626 F.2d 477 (5th Cir. 1980)). The *LeBoon* court also adopted a narrow approach to religious organization exemption, recognizing that "not all factors will be relevant in all cases, and the weight given each factor may vary from case to case." 503 F.3d at 227. The flexibility of the *LeBoon* test, its factual similarities to Defendant's situation, and its incorporation of the Ninth Circuit factor test render it more suitable to the present case.

In *LeBoon*, the Third Circuit held that a Jewish community center "qualified as a 'religious corporation, organization, or institution'" exempted as an employer from compliance with the religious discrimination provisions of Title VII. *Id.* at 221. To make this determination, the Third Circuit delineated a nine-factor test. *Id.* at 226. The factors are: (1) whether the entity operates for a profit; (2) whether it produces a secular product; (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose; (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue; (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees; (6) whether the entity holds itself out to the public as secular or sectarian; (7) whether the entity regularly includes prayer or other forms of worship in its activities; (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution; and (9) whether its membership is made up by coreligionists. *Id.*

### 2. Can Defendant assert the exemption?

Employing the *LeBoon* nine-factor test, the Court must determine whether Defendant qualifies as a religious organization.

#### (1) Whether the entity operates for a profit

Plaintiffs concede that Defendant is a non-profit business. World Vision International received a group exemption from the IRS. Regnier Decl. Ex. PP. The IRS classified World Vision International as a tax-exempt 501(c)(3) nonprofit organization and designated it as a

MEMORANDUM ORDER

PAGE - 9

church. *Id.* The group exemption letter applies to all of World Vision International's subordinate organizations. *Id.* Additionally, the State of California classified Defendant as a "religious" nonprofit corporation. Regnier Decl. Ex. QQ.

### (2) Whether it produces a secular product

Unlike the corporation in *Townley*, 859 F.2d at 619, Defendant does not produce a secular product such as mining equipment. Instead, Defendant provides humanitarian services such as relief and aid, which the Plaintiffs concede—"World Vision . . . is a service-oriented non-profit institution." Dkt. # 18 at 12.

While providing humanitarian services may be a secular activity, it is not necessarily so. Plaintiffs suggest that only "direct inculcation of religious doctrine or support of religion" qualifies as religious activity. Dkt. # 18 at 20. This argument fails to recognize that while providing humanitarian services may be a secular activity, for Christians, this type of activity is so motivated by their faith and part of their Christian identity that it must be considered a religious activity. "Motivated by our faith in Jesus, we serve the poor as a demonstration of God's unconditional love for all people. Our faith is at the heart of all we do." Regnier Decl. Ex. D.

Even if the Court were to find that Defendant's humanitarian activities were secular activities, "[r]eligious organizations may engage in secular activities without forfeiting protection under Section 702." *LeBoon*, 503 F.3d at 229. Congress broadened the scope of Title VII's religious organization exemption to include all activities of the organization, not just religious ones. *See Saeemodarae v. Mercy Health Services*, 456 F. Supp. 2d 1021, 1035 (N.D. Iowa) (citing *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 332 n.9, 331, 340, 107 S. Ct. 2862, 97 L. Ed. 2d 273(1987) (holding that application of the § 2000e-1(a) exemption to "secular non-profit activities of religious organizations" does not violate the Establishment Clause of the First Amendment)); *see also Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 247 (S.D.N.Y. 2005) (the § 2000e-1(a) exemption, as amended in 1972, applies "to activities of religious organizations, regardless of whether those activities are religious or secular in nature"). Therefore, providing humanitarian

services, possibly a secular activity, does not disqualify Defendant from the religious organization exemption.

### (3) Whether the entity's articles of incorporation or other pertinent documents state a religious purpose

Defendant's articles of incorporation and bylaws state a religious purpose. Defendant's articles of incorporation provide:

> The primary, exclusive and only purposes for which this corporation is organized are religious ones, to wit: to perform the functions of the Christian church including, without limitation, the following functions, to conduct Christian religious and missionary services, to disseminate, teach and preach the Gospel and teachings of Jesus Christ, to encourage and aid the growth, nuture [sic] and spread of the Christian religion and to render Christian service, both material and spiritual to the sick, the aged, the homeless and the needy. The recital of these purposes as contained in this paragraph is intended to be exclusive of any and all other purposes, this corporation being formed for such religious purposes only.

Regnier Decl. Exs. NN at 1–2. Defendant's bylaws include an identical purpose statement. Regnier Decl. Ex. OO at 1.

### (4) Whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue

Plaintiffs assert that Defendant does not meet the affiliation standard because it "is not owned or controlled by a church, and does not identify a single church or sect with whom it is principally affiliated." Dkt. # 18 at 14. However, Plaintiffs concede Defendant partners with a full spectrum of Christian organizations. *Id.* This type of partnership establishes affiliation with a religious entity. *See LeBoon*, 503 F.3d at 229. In *LeBoon*, the Third Circuit found that the community center "maintained close and active ties with [the three local synagogues] and other Jewish organizations." *Id.* at 227. Therefore, Defendant's association with U.S. churches and Christian organizations, similar to the community center's association with synagogues and Jewish organizations in *LeBoon*, qualifies as affiliation with a religious entity. Declaration of Torrey Olsen ¶ 20.

Additionally, Defendant is financially supported by religious entities. The *LeBoon* court considered the financial support provided to the community center by synagogues and local

MEMORANDUM ORDER
PAGE - 11

Jewish organizations. 503 F.3d at 227. Similar financial contributions are made to Defendant by churches and individuals. Regnier Decl. ¶ 27. In fiscal year 2006, approximately 84 percent of cash contributions originated from churches and individuals "who share the religious vision of Defendant]." *Id.* Fundraising letters to donors contain Bible verses and references the fact that Defendant is a Christian humanitarian organization. Regnier Decl. ¶ 27, Regnier Decl. Ex. MM.

Plaintiffs do not contest the financial contribution made by churches, but instead argue that the U.S. government provided funding, which cannot be used to promote religion. Dkt. #18 at 5, 14. Specifically, Plaintiffs assert that over the past three years, government grants comprised 23 to 27 percent of Defendant's total revenue. Declaration of Wendy L. Lilliedoll Ex. 16. Courts have found, however, that religious organizations receiving federal funds are not required to waive eligibility for Section 702 protection. *See Lown*, 393 F. Supp. 2d at 251 (citing *Hall*, 215 F.3d at 625; *Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991); *Young v. Shawnee Mission Medical Center*, Civ. A. No. 88-2321-S, 1988 U.S. Dist. LEXIS 12248, at *4-5 (D. Kan. Oct. 21, 1988)). As Defendant has alleged, based on a study of 118 faith-based welfare-to-work programs, "a nonprofit organization's receipt of funds from the government is not an indication of its secular nature [as] . . . many even intentionally and explicitly religious nonprofit organizations receive large amounts of government funding, and . . . have done so without having to curtail their religious activities." Declaration of Stephen Monsma ¶ 10; *see also* Monsma Decl ¶¶ 4–13. Plaintiffs have not demonstrated how federal funding inhibits Defendant's activities promoting religion in the same communities that receive resources paid for, in part, with government funds, as separate budgets are used when government funds are received for projects. *See* Olsen Decl. ¶¶ 21–22.

> (5) <u>Whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees</u>

Twenty individuals from various fields comprise the Defendant's Board of Directors. Regnier Decl. ¶ 29. Of those twenty directors, ten are from "church and ministry leadership." Regnier Decl. Ex. TT. To comply with Defendant's bylaws, leaders must be from "church and

MEMORANDUM ORDER
PAGE - 12

ministry leadership." Regnier Decl. ¶ 29. Plaintiffs assert that the organizational leadership is from business and government, not the church, and then discuss the salaries of seven leaders. Dkt. # 18 at 4–5. However, salaries of Defendant's leaders are irrelevant; Plaintiffs provide no legal authority to explain why the salaries of board members is a factor demonstrating religious or secular characteristics of a religious organization. Moreover, the role of religious entities participating in management does not need to be significant. In *LeBoon*, rabbis from three local synagogues played an advisory role in the center's management, but did so as nonvoting members of the board of trustees. 503 F.3d at 227. In contrast, half of Defendant's Board of Directors is from church and ministry leadership, indicating that a formally religious entity participates in the management of Defendant.

(6) <u>Whether the entity holds itself out to the public as secular or sectarian</u>

Defendant holds itself out to the public as a religious organization. Its website, job application form, mailings, instruction materials, and business cards all reference the fact that Defendant is "a Christian humanitarian organization," that "[o]ur faith [in Jesus] is at the heart of all we do," or the Defendant's mission. Regnier Decl. Exs. C–F, II; *see also* Declaration of Larry Short ¶¶ 3–4; Regnier Decl. Ex. H; Regnier Decl. Ex. MM; Regnier Decl. Ex. RR, ZZ; Regnier Decl. Ex. YY.

Additionally, religious art—paintings, photographs, sculptures, and artistic lettering of religious symbols and Bible verses—is displayed throughout the Defendant's campuses and buildings. Regnier Decl. Ex. XX. The Third Circuit found this type of display of an organization's religious symbols—such as the Jewish community center's use of the mezuzah on its doorway—to be significant in its conclusion that the Jewish community center was a religious organization. *LeBoon*, 503 F.3d at 229.

(7) <u>Whether the entity regularly includes prayer or other forms of worship in its activities</u>

In its activities, Defendant regularly includes prayers and other forms of worship such as chapel services, devotionals led by department leaders, prayer chains, an annual day of prayer,

MEMORANDUM ORDER
PAGE - 13

and Scriptural themes. Regnier Decl., ¶¶ 18–23; Regnier Decl. Exs V, X–Z, AA–FF. Plaintiffs concede that "World Vision coordinates Christian employee programming, such as prayer activities, regular devotionals, and weekly chapel services." Dkt. # 18 at 5. Moreover, Plaintiffs concede that prayer is a component of Defendant's work. *See id.* at 3. "World Vision's site [containing a section encouraging individuals, youth, churches, and corporations to "Get Involved] . . . advocate prayer." *Id.*

> (8) <u>Whether it includes religious instruction in its curriculum, to the extent it is an educational institution</u>

Defendant is not an educational institution; it does not provide religious instruction. *See infra* Part C.1. This factor does not apply.

> (9) <u>Whether its membership is made up by coreligionists</u>

Plaintiffs do not dispute that Defendant's membership is comprised of coreligionists; Plaintiffs concede that "World Vision hires only Christians for all positions." Dkt. # 18 at 5.

## IV.  CONCLUSION

Consideration of these nine factors demonstrates that Defendant's purpose and character are primarily religious. Plaintiffs have not shown that there is a genuine issue of material fact on the Defendant's qualification for the religious organization exemption. The Court finds that Defendant is a religious organization within the meaning of 42 U.S.C. § 2000e-1(a), and thus exempt from Title VII. Accordingly, Defendant's motion for summary judgment is GRANTED and Plaintiffs' claims are dismissed.

DATED this 21st day of May, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE